***NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | : | |
|---|---|---|
| **IN RE PLAVIX® PRODUCT LIABILITY** | : | |
| **AND MARKETING LITIGATION** | : | MDL No. 3:13-cv-2418-FLW |
| | : | |
| **Relates to Cases:** | : | |
| Ravy Vanny, et al. v. Bristol-Myers Squibb | : | |
| Company, et al. 3:13-cv-03610-FLW-TJB | : | |
| Michael Arnold, et al. v. Bristol-Myers Squibb | : | **OPINION** |
| Company, et al. 3:13-cv-03612-FLW-TJB | : | |
| John Belinda, et al. v. Bristol-Myers Squibb | : | |
| Company, et al. 3:13-cv-03613-FLW-TJB | : | |
| Irving Arenberg, et al. v. Bristol-Myers Squibb | : | |
| Company, et al. 3:13-cv-03614-FLW-TJB | : | |
| Sandra Kinney, et al. v. Bristol-Myers Squibb | : | |
| Company, et al. 3:13-cv-03647-FLW-TJB | : | |
| Bennie Burman, et al. v. Bristol-Myers Squibb | : | |
| Company, et al. 3:13-cv-03648-FLW-TJB | : | |
| Wauneta Raynor, et al. v. Bristol-Myers Squibb | : | |
| Company, et al. 3:13-cv-03649-FLW-TJB | : | |
| George Robinson, et al. v. Bristol-Myers Squibb | : | |
| Company, et al. 3:13-cv-03651-FLW-TJB | : | |
| Iris Meeks, et al. v. Bristol-Myers Squibb | : | |
| Company, et al. 3:13-cv-03652-FLW-TJB | : | |
| Jack Olmstead, et al. v. Bristol-Myers Squibb | : | |
| Company, et al. 3:13-cv-03654-FLW-TJB | : | |
| George Dillard, et al. v. Bristol-Myers Squibb | : | |
| Company, et al. 3:13-cv-03655-FLW-TJB | : | |
| Virgil Walden, Jr., et al. v. Bristol-Myers Squibb | : | |
| Company, et al. 3:13-cv-03656-FLW-TJB | : | |
| Damon Kaluza, Sr., et al. v. Bristol-Myers Squibb | : | |
| Company, et al. 3:13-cv-03657-FLW-TJB | : | |
| Vertus Corkerin, et al. v. Bristol-Myers Squibb | : | |
| Company, et al. 3:13-cv-03658-FLW-TJB | : | |
| James Aiken, et al. v. Bristol-Myers Squibb | : | |
| Company, et al. 3:13-cv-03732-FLW-TJB | : | |
| Ardean Lowery, et al. v. Bristol-Myers Squibb | : | |
| Company, et al. 3:13-cv-03941-FLW-TJB | : | |
| Michael Farmer, et al. v. Bristol-Myers Squibb | : | |
| Company, et al. 3:13-cv-03942-FLW-TJB | : | |
| Elizabeth Abney, et al. v. Bristol-Myers Squibb | : | |
| Company, et al. 4:13-cv-04213-FLW-TJB | : | |
| Franklin Addison, et al. v. McKesson, A California | : | |
| Corporation, et al. 3:13-cv-02166 | : | |

| | |
|---|---|
| Alfonso Aguilar, et al. v. Bristol-Myers Squibb Company, et al. 3:14-cv-02817 | : : |
| Philip Agulay, et al. v. Bristol-Myers Squibb Company, et al. 3:14-cv-01374 | : : |
| Neil Alford, et al. v. Bristol-Myers Squibb Company, et al. 3:14-cv-0436 | : : |
| Gary Baez, et al. v. Bristol-Myers Squibb Company, et al. 3:14-cv-01735 | : : |
| Fred Baird, et al. v. Bristol-Myers Squibb Company, et al. 3:14-cv-00637 | : : |
| Vondell Bankert, et al. v. Bristol-Myers Squibb Company, et al. 3:13-cv-7750 | : : |
| Banks, et al. v. Bristol-Myers Squibb Company, et al. 3:13-cv-5313 | : : |
| James Blair, et al. v. Bristol-Myers Squibb Company, et al. 3:14-cv-04259 | : : |
| Peggy Boatright, et al. v. Bristol-Myers Squibb Company, et al. 3:13-cv-5309 | : : |
| Brown, et al. v. Bristol-Myers Squibb Company, et al. 3:14-cv-4257 | : : |
| Patricia Buck, et al. v. Bristol-Myers Squibb Company, et al. 3:14-cv-03496 | : : |
| Edward Bustamante, et al. v. Bristol-Myers Squibb Company, et al. 3:13-cv-07883 | : : |
| Davis, et al. v. Bristol-Myers Squibb Company, et al. 3:13-cv-04784 | : : |
| Michael Diercks, et al. v. Bristol-Myers Squibb Company, et al. 3:13-cv-01264 | : : |
| Bella Docks, et al. v. Bristol-Myers Squibb Company, et al. 3:13-cv-07237 | : : |
| Larry Douglas, et al. v. Bristol-Myers Squibb Company, et al. 3:13-cv-05912 | : : |
| Lawrence Evans, et al. v. Bristol-Myers Squibb Company, et al. 3:13-cv-4258 | : : |
| Dorothy Gibson, et al. v. Bristol-Myers Squibb Company, et al. 3:13-cv-04785 | : : |
| Green, et al. v. Bristol-Myers Squibb Company, et al. 3:13-cv-04786 | : : |
| Dale Guinn, et al. v. Bristol-Myers Squibb Company, et al. 3:13-cv-04780 | : : |
| Pamela Harris, et al. v. Bristol-Myers Squibb Company, et al. 3:13-cv-5316 | : : |
| Kenneth Howell, et al. v. Bristol-Myers Squibb Company, et al. 3:13-cv-04783 | : : |
| Howard Jones, et al. v. Bristol-Myers Squibb Company, et al. 3:13-cv-05944 | : : |

| | |
|---|---|
| Zelda Justice, et al. v. Bristol-Myers Squibb Company, et al. 3:14-cv-748 | : : |
| Eddie Kessel, et al. v. Bristol-Myers Squibb Company, et al. 3:13-cv-5327 | : : |
| Sher Khan, et al. v. Bristol-Myers Squibb Company, et al. 3:13-cv-05314 | : : |
| Philip Lopresti, et al. v. Bristol-Myers Squibb Company, et al. 3:13-cv-07749 | : : |
| Jose Marrero, et al. v. Bristol-Myers Squibb Company, et al. 3:13-cv-04815 | : : |
| Mary Mathis, et al. v. Bristol-Myers Squibb Company, et al. 3:13-cv-07882 | : : |
| Frances McGuire, et al. v. Bristol-Myers Squibb Company, et al. 3:13-cv-05311 | : : |
| Meyer, et al. v. Bristol-Myers Squibb Company, et al. 3:13-cv-4299 | : : |
| Randall Ritchey, et al. v. Bristol-Myers Squibb Company, et al. 3:13-cv-04894 | : : |
| Leon Roberson , et al. v. Bristol-Myers Squibb Company, et al. 3:13-cv-5276 | : : |
| Dolly Sanders, et al. v. Bristol-Myers Squibb Company, et al. 3:14-cv-4260 | : : |
| Search, et al. v. Bristol-Myers Squibb Company, et al. 3:14-cv-4261 | : : |
| Terry, et al. v. Bristol-Myers Squibb Company, et al. 3:13-cv-3649 | : : |
| David Wilkerson, et al. v. Bristol-Myers Squibb Company, et al. 3:13-cv-5413 | : : |
| Helen Yuan, et al. v. Bristol-Myers Squibb Company, et al. 3:13-cv-7664 | : : |
| | : |

**WOLFSON, United States District Judge**:

The captioned cases, which have been transferred to this Court as part of a Multi-District Litigation ("MDL"), arise from alleged wrongful acts, omissions, and fraudulent representations by Bristol-Meyers Squibb Co. ("BMS"); Sanofi-Aventis U.S. LLC., Sanofi-Aventis U.S. Inc., and Sanofi-Synthelabo, Inc. ("Sanofi") (collectively the "Moving Defendants"); and McKesson Corporation ("McKesson")[1] with respect to the manufacturing and marketing of the drug Plavix

---

[1]   Hereinafter, BMS, Sanofi and Mckesson shall be referred to as "Defendants."

by BMS and Sanofi, and the marketing and distribution of Plavix by McKesson. Plaintiffs, as set forth in the above caption, are individuals who ingested Plavix and allegedly suffered injuries as a result, as well as the spouses of these individuals. Initially, these Plaintiffs brought suit in the California State Superior Court in San Francisco;[2] however, upon removal by BMS and Sanofi to the United States District Court for the Northern District of California, these cases[3] were transferred to this Court by the Multi-District Litigation Panel as part of the In re Plavix MDL, assigned to me. Before this Court is an omnibus motion to remand these cases to state court. For the reasons that follow, the motion is **GRANTED**.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Between 2012 and 2014, Plaintiffs filed these instant actions, involving numerous individual plaintiffs from forty-five states, Ontario, and Puerto Rico, in the California State Superior Court located in San Francisco, California. In each of these Complaints multiple plaintiffs are joined, and at least one named plaintiff is from New York, New Jersey, or Delaware. As for the citizenship of Defendants: BMS is headquartered in New York; Sanofi-Aventis U.S. LLC and Sanofi-Aventis U.S., Inc. are French companies with their American headquarters in New Jersey; Sanofi-Synthelabo, Inc. is a Delaware corporation with its headquarters in New York; and McKesson is a Delaware corporation with its headquarters in California. As such, because there is at least one non-diverse plaintiff (the majority of the cases have more than one non-diverse

---

[2]   Currently, the California state court is also handling centralized cases relating to Plavix.

[3]   Originally, eighteen separate cases were transferred to this Court, and Plaintiffs in those cases filed the current omnibus motion for remand. During the pendency of this motion, additional cases were transferred from the Northern District of California; those cases were also removed by BMS and Sanofi from the same centralized California state Plavix litigation. The parties have agreed that the present motion applies to those later-transferred cases as well. In that regard, all of the MDL member cases subject to this motion are set forth in the above caption.

plaintiff) in each of these cases, on the face of these Complaints, complete diversity is lacking.

Nevertheless, BMS and Sanofi removed all of these cases to the District Court for the Northern District of California based on fraudulent misjoinder and fraudulent joinder. Thereafter, in June 2013, the Judicial Panel on Multidistrict Litigation transferred these matters to this Court as part of the In re Plavix MDL. Subsequently, Plaintiffs filed the instant omnibus motion to remand to California State Superior Court.

Because these Complaints are all similar in nature, the Court will recount general facts as pled in Ravy Vanny, et al. v. Bristol-Myers Squibb Company, et al., No. 13-3610 (FLW), and take them as true for the purposes of this motion. The Complaints allege personal injuries arising from the ingestion of Plavix by Plaintiffs and loss of consortium claims by some spouses. According to Plaintiffs, Plavix was heavily marketed directly to consumers through television, magazine and internet advertising. Compl. at ¶ 79. Plaintiffs claim that the drug was represented by Defendants as providing greater cardiovascular benefits, while being safer and easier on a person's stomach, than a more expensive aspirin regimen. Id. In reality, Plaintiffs allege, Plavix is not more effective than aspirin in preventing heart attacks and strokes. Id. at ¶ 80. In fact, according to Plaintiffs, the growing body of scientific knowledge has established that the four-dollar Plavix pill is no better than the four-cent-a-day aspirin pill, and, after taking Plavix, the risk of suffering a heart attack, stroke, internal bleeding, blood disorder, or death outweighs any potential benefit. Id. at ¶¶ 90-94.

Defendants allegedly knew that Plavix was not a better alternative to aspirin, and Defendants allegedly knew or should have known of the injuries associated with taking Plavix, but nonetheless, continued to distribute and market the drug without providing corresponding warnings. Id. at ¶¶ 80-81. Plaintiffs further aver that Defendants, through their drug representatives and promotional efforts, also encouraged physicians to prescribe Plavix to a broad

population of people who would receive the same therapeutic benefit from aspirin alone, and to use Plavix for unapproved applications. Id. at ¶ 89.

As a result of these alleged wrongful acts, omissions, and fraudulent representations by Defendants, Plaintiffs assert, inter alia, various product liability and fraud claims against BMS, Sanofi, and McKesson, collectively.  Specifically, Plaintiffs bring state law claims of: (1) design defect; (2) manufacturing defect; (3) negligence; (4) breach of implied warranty; (5) breach of express warranty; (6) deceit by concealment under California law; (7) negligent misrepresentation; (8) fraud by concealment; (9) violations of California Business & Professions Code § 17200; (10) violations of California Business & Professions Code § 17500; (11) violations of the California Consumers Legal Remedies Act; and (12) wrongful death.  Importantly, Plaintiffs do not assert any federal claims.  Therefore, the only basis upon which the Moving Defendants removed these actions is diversity.  On this motion, while Plaintiffs argue that removal was improper because complete diversity is lacking, the Moving Defendants submit that removal is appropriate because defendant Mckesson was fraudulently joined and that individual plaintiffs' claims are fraudulently misjoined.

**STANDARD OF REVIEW**

Pursuant to 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants to the district court."  In a removal matter, the defendant seeking to remove bears the burden of showing that federal subject matter jurisdiction exists, that removal was timely filed, and that the removal was proper. Boyer v. Snap-on Tools Corp., 913 F.2d 108, 111 (3d Cir.1990), cert. denied, 498 U.S. 1085 (1991).  Once the case has been removed, however, the court may nonetheless remand it to state court if the removal was procedurally defective or subject matter

jurisdiction is lacking. 28 U.S.C. § 1447(c).

Subject matter jurisdiction may be based upon federal question or diversity grounds. 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1332 (diversity). In diversity cases, each party must be of diverse citizenship from each other and the amount in controversy must exceed $75,000. 28 U.S.C. § 1332(a); Grand Union Superm. of the Virgin Isl., Inc., v. H.E. Lockhart Mgmt., Inc., 316 F.3d 408, 410 (3d Cir. 2003).

Where subject matter jurisdiction is based on diversity citizenship, Section 1441(b) imposes an additional condition on removal known as the "forum defendant rule." Under Section 1441(b), an action can be removed on the basis of diversity jurisdiction "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." Therefore, the forum defendant rule prohibits removal based on diversity where a defendant is a citizen of the forum state—the state in which the plaintiff originally filed the case. See, e.g., Blackburn v. United Parcel Service, Inc., 179 F.3d 81 (3d Cir.1999).

## DISCUSSION

**I.    Removal Prior to Service**

As a threshold question**,** Plaintiffs, invoking the forum defendant rule, argue that removal was improper because defendant McKesson is a citizen of the forum state, i.e., California. In response, the Moving Defendants posit that, aside from whether McKesson is fraudulently joined,[4] the forum defendant rule does not preclude removal in this instance because McKesson was not "properly joined and served" at the time of removal. In support of their argument, the Moving Defendants specifically point to the language in Section 1441(b) which states that cases in which subject matter jurisdiction is premised on diversity citizenship "may not be removed if any of the

---

[4]    The Court will discuss fraudulent joinder, infra.

parties in interest properly joined *and served* as defendants is a citizen of the State in which the action is brought." 28 U.S.C. § 1441(b)(2) (emphasis added). The Moving Defendants argue that by the plain language of the statute, the forum defendant rule does not apply until the forum defendant, i.e., McKesson, has been properly served. The Moving Defendants reason that because McKesson had not been served at the time BMS and Sanofi removed these cases to the Northern District of California, removal is proper under § 1441(b).

On the other hand, Plaintiffs argue that a literal interpretation of the "joined and served" language would create a bizarre result that Congress could not have intended. Specifically, they argue that § 1441(b) was enacted to prevent gamesmanship by plaintiffs filing against resident defendants whom they do not intend to serve, simply to block removal. However, Plaintiffs suggest that a literal interpretation of the language would allow for another type of gamesmanship, i.e., hasty filing of removals. They point to anecdotes of defendants using internet-based tracking systems to discover the existence of lawsuits filed against them, and racing to the courthouse to remove the matter and defeat plaintiff's choice of forum where the forum defendant rule would specifically bar removal after service of the complaint.

On this specific issue, there are decisions from courts within this district on both sides of the dispute. Some courts have allowed removal prior to service upon a forum defendant based on the plain language of the statute. See, e.g., Poznanovich v. AstraZeneca Pharm. LP, No. 11-4001, 2011 WL 6180026, at *4 (D.N.J. Dec. 12, 2011) ("The Court finds that the language of the statute is plain, and, thus, adherence to the plain language is required."); Bivins v. Novartis Pharm. Corp., No. 90-1087, 2009 WL 2496518, at *2 (D.N.J. Aug. 10, 2009) ("Here, the statutory language is clear: 'removal is prohibited only where a defendant, who is a resident of the forum state, has been 'properly joined and served.'"") (internal citations omitted); Thomson v. Novartis Pharm. Corp.,

No. 06-6280, 2007 WL 1521138, at *4 (D.N.J. May 22, 2007) ("Plaintiffs have not convinced the Court that permitting removal prior to the time of service would be 'demonstrably at odds' with Congressional intent or create such a 'bizarre' outcome 'that Congress could not have intended it.'") (internal citations omitted); Yocham v. Novartis Pharm. Corp., No. 07-1810, 2007 WL 2318493, at *3 (D.N.J. Aug. 13, 2007) ("[U]nder the plain reading of § 1441(b), removal was not prohibited because NPC (a resident of the forum state) had not been served when it removed this case to this Court."); Ripley v. Eon Labs Inc., 622 F. Supp. 2d 137, 142 (D.N.J. 2007) ("The plain language of 28 U.S.C. § 1441(b), despite the numerous policy arguments against it, permits removal of this case from the Superior Court of New Jersey to this Court."); Jaeger v. Schering Corp., No. 07-3465, 2007 WL 3170125, at *3 (D.N.J. Oct. 25, 2007) ("This limitation, however, only applies to a case in which an in-state defendant has been 'properly joined and served.'").

Other courts in this district have found that a literal interpretation of the "properly joined and served" language of § 1441(b) would be inconsistent with congressional intent. See, e.g., Williams v. Daiichi Sankyo, Inc., No. 14-863, 2014 WL 1391240, at *5 (D.N.J. Apr. 9, 2014) ("[P]ermitting these non-forum Defendants to remove before the Plaintiffs are actually capable of serving the forum Defendants violates the intention of the forum defendant rule by permitting gamesmanship."); Hokanson v. Kerr Corp., No. 13-4534, 2014 WL 936804, at *2 (D.N.J. Mar. 10, 2014) ("This Court intends to abide by the line of cases holding that a non-forum defendant cannot remove a case where there are unserved forum defendants…") (internal quotations omitted); Walborn v. Szu, No. 08-6178, 2009 WL 983854, at *5 (D.N.J. Apr. 7, 2009) ("In the absence of any evidence that Mr. Szu's joinder was improper, the court rules that this proceeding does not fall under the category of cases that Congress meant to address by adding the 'properly joined and served' language to § 1441(b), and National's removal therefore violated the forum

defendant rule."); Sullivan v. Novartis Pharm. Corp., 575 F. Supp. 2d 640, 643 (D.N.J. 2008) ("[T]he Court will look beyond the language of the statute in order to avoid an absurd and bizarre result, and in order to give effect to the purpose of the forum defendant rule and the 'properly joined and served' language."); Brown v. Organon Int'l Inc., No. 07-3092, 2008 WL 2833294, at *5 (D.N.J. July 21, 2008) ("This Court must give effect to the purpose of the statute rather than its literal words of the statute.  Section 1441(b) bars removal here even if Organon has not been 'properly joined and served.'"); DeAngelo-Shuayto v. Organon USA Inc., No. 07-2923, 2007 WL 4365311, at *5 (D.N.J. Dec. 12, 2007) ("[T]he Court finds that a forum defendant cannot remove to federal court even if the forum defendant has not been 'properly joined and served.'"); Fields v. Organon USA Inc., No. 07-2922, 2007 WL 4365312, at *5 (D.N.J. Dec. 12, 2007) ("[T]he Court finds that a forum defendant cannot remove to federal court even if the forum defendant has not been 'properly joined and served.'").

Clearly, there is considerable debate within this district alone on the issue of removal prior to service upon a forum defendant.  Moreover, the Third Circuit has yet to decide this issue.  In this case, however, the Court need not conduct an exercise of statutory interpretation in resolving this issue, because, as explained below, subject matter jurisdiction is lacking in the first instance.[5]

## II.     Fraudulent Misjoinder

As explained above, each of these cases includes at least one non-diverse plaintiff residing in New York, New Jersey, or Delaware.  Because BMS is a citizen of New York, the Sanofi defendants are citizens of New Jersey and Delaware, complete diversity is lacking.  Pursuant to

---

[5] Furthermore, I need not consider McKesson's California citizenship because each of these cases, without exception, includes at least one plaintiff residing in New York, New Jersey, or Delaware -- the states in which defendants BMS and Sanofi are citizens. Therefore, as explained further below, complete diversity would be lacking even if defendant McKesson were fraudulently joined, as Defendants suggest.

the fraudulent misjoinder doctrine, the Moving Defendants argue, however, that these non-diverse plaintiffs have no apparent connection to other named plaintiffs except for their ingestion of Plavix. In particular, the Moving Defendants argue that these plaintiffs do not allege that they received Plavix from the same prescribing physician, suffered the same type of injuries, used Plavix alone or in combination with aspirin, ingested Plavix for the same reasons, used Plavix for similar lengths of time, or took similar dosages of Plavix.  As a result, based on these varying factual matters, the Moving Defendants assert that each of the plaintiffs' claims involve divergent questions of law and fact, and the non-diverse plaintiffs fail to meet the minimum standards for joinder. The Moving Defendants, thus, maintain that the Court must sever and dismiss the claims by these non-diverse plaintiffs under the doctrine of fraudulent misjoinder.  In response to these arguments, Plaintiffs stress that the fraudulent misjoinder theory has been rejected everywhere except in the Fifth and Eleventh Circuits, neither of which binds this Court.  Alternatively, they argue, even if the Court were to adopt the fraudulent misjoinder theory, joinder of these non-diverse plaintiffs is not a sham because there is no indication that they did not suffer Plavix-related injuries.

Having reviewed the Complaints before me, at the outset, I express the concerns that I have with the manner in which plaintiffs and non-diverse plaintiffs have joined their claims in single multiple-plaintiff actions.  That said, however, the inquiry which I must first decide is whether fraudulent misjoinder is a viable doctrine for a federal court exercising diversity jurisdiction to apply. On that question, this Court has reviewed numerous case law on both sides of the aisle and come to a determination that the issue of misjoinder should be resolved by the state court as a matter of removal jurisprudence.

Fraudulent misjoinder, otherwise known as "procedural misjoinder", occurs when a plaintiff attempts to defeat removal by misjoining the unrelated claims of non-diverse party

plaintiffs against a defendant. Geffen v. Gen. Elec. Co., 575 F. Supp. 2d 865, 869 (N.D. Ohio 2008). While fraudulent joinder tests the viability of the claims against the defendant, fraudulent misjoinder tests the procedural basis of a party's joinder. See Asher v. Minn. Mining & Mfg. Co., No. 04-522, 2005 WL 1593941, at *4 (E.D. Ky. June 30, 2005) (stating that fraudulent joinder addresses whether plaintiffs' "joined claims are unrelated and have been improperly joined to destroy diversity."); see also Geffen, 575 F. Supp. 2d 865, 869 (N.D. Ohio 2008) ("[W]ith fraudulent misjoinder, the charge is that the joined claims are unrelated and have been improperly joined in one action to destroy diversity.").

The fraudulent misjoinder doctrine was first articulated by the Eleventh Circuit in Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353 (11th Cir. 1996). In Tapscott, the Eleventh Circuit acknowledged that improper joinder can operate to defeat a defendant's right to remove, but noted that the misjoinder must be "egregious" in order to rise to the level of being fraudulent. Id. at 1360. Part of what made the misjoinder in Tapscott "egregious" was that there was "no real connection" between the underlying facts of the claims. Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1289 (11th Cir. 1998). Other circuits have since acknowledged the fraudulent misjoinder doctrine, but few have explicitly adopted it. See Lafalier v. State Farm Fire & Cas. Co., 391 Fed. Appx. 732, 739-40 (10th Cir. 2010); Anderson v. Bayer Corp., 610 F.3d 390, 394 (7th Cir.2010); In re Prempro Prods. Liability Litig., 591 F.3d 613, 622 (8th Cir. 2010); Ca. Dump Truck Owners Ass'n v. Cummins Engine Co., Inc., 24 Fed. Appx. 727, 729 (9th Cir. 2001). Even amongst the courts that have adopted the fraudulent misjoinder doctrine, no clear standard for its application has emerged. Rutherford v. Merck & Co., Inc., 428 F. Supp. 2d 842, 850-55 (S.D. Ill. 2006) (collecting cases).

I note that the Third Circuit has not addressed the issue of fraudulent misjoinder. In re

Avandia Mktg., Sales Practices & Products Liab. Litig., 624 F. Supp. 2d 396, 412 n.46 (E.D. Pa. 2009). At least one court in this district, cited by the Moving Defendants here, has however applied the fraudulent misjoinder doctrine. See In re Fosamax (Alendronate Sodium) Products Liab. Litig. (No. II), No. 11-3045, 2012 WL 1118780 (D.N.J. Apr. 3, 2012) aff'd, 751 F.3d 150 (3d Cir. 2014).[6] In Fosamax, the Court acknowledged that fraudulent misjoinder has not been universally adopted and that the Third Circuit has not addressed the issue. Id. at *6. Nevertheless, the Fosamax court applied the doctrine in a pharmaceutical action.[7] Id. at *3. Despite Fosamax, however, as a general matter and without regard to the nature of the case, it appears that an overwhelming number of courts in this district have declined to apply the fraudulent misjoinder doctrine. See, e.g., Kaufman v. Allstate Ins. Co., No. 07-6160, 2010 WL 2674130, at *8 (D.N.J. June 30, 2010) ("The Court, without guidance from the Third Circuit, and noting other district courts' reluctance to embrace the Tapscott doctrine finds that this issue would be better decided in state court, the court in which

---

[6] The issue of fraudulent misjoinder was not on appeal before the Third Circuit. Therefore, the issue remains unresolved by the Third Circuit.

[7] Although Fosamax applied fraudulent misjoinder specifically in the pharmaceutical context, various other courts have rejected fraudulent misjoinder in similar circumstances. See, e.g., In re Prempro Prods. Liab. Litig., 591 F.3d at 624 n.8 ("Considering the uncertainty surrounding the propriety of the joinder of plaintiffs' claims, the preferable course of action may have been for pharmaceutical defendants to challenge the misjoinder in state court before it sought removal."); Geffen v. Gen. Elec. Co., 575 F. Supp. 2d 865, 869 (N.D. Ohio 2008) (rejecting use of fraudulent misjoinder doctrine to sever medical malpractice claims against medical defendants from products liability claims against pharmaceutical defendants); Livingston v. Hoffmann-La Roche, Inc., No. 09-2611, 2009 WL 2448804 (N.D. Ill. Aug. 6, 2009) (declining to adopt fraudulent misjoinder to sever claims against forum defendants from claims against pharmaceutical defendants); Reeves v. Pfizer, Inc., 880 F. Supp. 2d 926, 927-28 (S.D. Ill. 2012) (finding fraudulent misjoinder to be an improper expansion of federal diversity jurisdiction in an action against manufacturers of the prescription drug Zoloft); Baker v. Johnsons and Johnson, 709 F. Supp. 677, 686-87 (S.D. Ill. 2010) (declining to recognize fraudulent misjoinder doctrine in personal injury action against manufacturers and distributors of the drug Levaquin). Indeed, as discussed below, it is more prudent for state courts to determine questions of joinder pursuant to state law procedural rules, regardless of the nature of the case.

the parties were originally joined."); Belmont Condo. Ass'n, Inc. v. Arrowpoint Capital Corp., No. 11-02900, 2011 WL 6721775, at *7 (D.N.J. Dec. 20, 2011) ("This Court declines to include procedural misjoinder as an alternative ground for fraudulent joinder."); see also In re Paulsboro Derailment Cases, No. 13-5583, 2014 WL 197818, at *3-7 (D.N.J. Jan. 13, 2014) (declining to apply fraudulent misjoinder because it is unclear whether it is a viable theory in the district, it has never been applied outside of the pharmaceutical context, defendants failed to point to any egregious conduct on the part of plaintiffs, and because the plain requirements of Rule 20 for permissive joinder were satisfied); Prudential Ins. Co. of Am. v. Barclays Bank PLC, No. 12-5854, 2013 WL 221995, at *10 n.13 (D.N.J. Jan. 22, 2013) ("The Third Circuit has never approved extending the doctrine to attack the joinder of Plaintiffs, and some courts refuse to do so.") report and recommendation adopted, No. 12-05854, 2013 WL 1890279 (D.N.J. May 6, 2013); Reuter v. Medtronics, Inc., No. 10-3019, 2010 WL 4628439, at *5-6 (D.N.J. Nov. 5, 2010) ("Even assuming fraudulent misjoinder in its most expansive form was accepted in this Circuit (which it clearly is not), it would not apply here.") report and recommendation adopted, No. 10-3019, 2010 WL 4902662 (D.N.J. Nov. 23, 2010).

Indeed, these New Jersey district courts decisions are not without substantial support from other decisions across the country. A review of federal cases reveals that the consensus amongst other courts is against the adoption of such a doctrine. See Geffen v. Gen. Elec. Co., 575 F. Supp. 2d 865, 872 (N.D. Ohio 2008) ("In sum, the Court declines to follow the Tapscott holding and apply the doctrine of fraudulent misjoinder."); Halliburton v. Johnson & Johnson, 983 F. Supp. 2d 1355, 1359 (W.D. Okla. 2013) ("Given this criticism and the lack of guidance by the Tenth Circuit, the court declines to adopt the procedural misjoinder doctrine and to extend it to the plaintiffs' claims at issue in these actions."); Myers Indus., Inc. v. Young, No. 13- 01278, 2013 WL 4431250,

at *3 (N.D. Ohio Aug. 16, 2013) ("Because the Court cannot conclude with complete certainty that the Sixth Circuit would hold fraudulent joinder analysis applies to plaintiffs, and '[a]ll doubts as to the propriety of removal' must be resolved 'in favor of remand,' the Court is bound to refuse to apply fraudulent joinder analysis…"); Fore Investments, LLC v. Travelers Indem. Co. of Am., No. 12-01702, 2013 WL 3467328, at *8 (S.D. Ind. July 9, 2013) ("This court therefore finds that misjoinder is a question for the state court, applying its own procedural rules and its own discretion."); Interior Cleaning Sys., LLC v. Crum, No. 14-0199, 2014 WL 3428932, at *5 n. 10 (S.D. Ala. July 14, 2014) ("The Court cannot (and, even if it had discretion to do so, would not) retroactively manufacture federal subject matter jurisdiction in this case by slicing off the non-diverse portions of the case, returning those to state court, and keeping the rest."); Vogel v. Merck & Co., 476 F. Supp. 2d 996, 1002 (S.D. Ill. 2007) (collecting cases).

The rationale against applying the fraudulent misjoinder doctrine in federal cases have been well articulated, and I am persuaded by those reasons. See Rutherford v. Merck & Co., Inc., 428 F. Supp. 2d 842 (S.D. Ill. 2006); Osborn v. Metro. Life Ins. Co., 341 F. Supp. 2d 1123 (E.D. Cal. 2004). First, as the Court in Rutherford explained, the fraudulent misjoinder doctrine amounts to an improper expansion of the scope of federal jurisdiction by federal courts. Rutherford, 428 F. Supp. 2d at 851-52. Indeed, nothing in the jurisprudence of the Supreme Court suggests that matters of state civil procedure, including, joinder of claims, is a question that implicates the subject matter jurisdiction of a federal court. Id.; Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 104 (1941); Chicago, R.I. & P.R. Co. v. Stude, 346 U.S. 574, 580 (1954) ("[State] procedural provisions cannot control the privilege [of] removal granted by the federal statute."). In that regard, federal courts traditionally have held that matters of state civil procedure have no bearing on the existence or nonexistence of federal subject matter jurisdiction. Id. It then logically follows

that federal courts should hesitate to exercise jurisdiction to determine whether claims are misjoined pursuant to state procedural rules.

Second, the Court's review of the case law regarding the fraudulent misjoinder doctrine that has emerged since Tapscott reveals enormous judicial confusion and inconsistencies engendered by the doctrine. See Rutherford, 428 F. Supp. 2d at 851. More specifically, courts differ on the question of what facts constitute egregious misjoinder under the doctrine. See, e.g., Walton v. Tower Loan of Miss., 338 F. Supp. 2d 691, 695 (N.D. Miss. 2004) ("[T]he governing legal standards regarding the fraudulent misjoinder doctrine are far from clear."); Bright v. No Cuts Inc., No. 03-640, 2003 WL 22434232, at *16 n.21 (E.D. La. Oct. 27, 2003) ("While the Tapscott court was clear that 'mere misjoinder' is not equivalent to fraudulent misjoinder, this aspect of the Tapscott holding has engendered confusion among courts and commentators alike."); Turnage v. Ford Motor Co. (In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.), 260 F. Supp. 2d 722, 728 (S.D. Ind. 2003) ("[U]nder Tapscott, something more than 'mere misjoinder' of parties may be required to find fraudulent misjoinder. Precisely what the 'something more' is was not clearly established in Tapscott and has not been established since."). On that question, predictably, courts which have chosen to follow Tapscott have not been able to craft a bright-line rule which distinguishes "egregious" misjoinders from "mere" misjoinders. Bird v. Carteret Mortg. Corp., No. 06-588, 2007 WL 43551, at *12 (S.D. Ohio Mar. 22, 2007). Such an unclear standard militates against the adoption of the doctrine.

Indeed, because of these types of consideration, the federal district courts in California have explicitly rejected the fraudulent misjoinder doctrine. See Osborn, 341 F. Supp. 2d at 1127; Aaron v. Merck & Co., Inc., No. 05-4073, 2005 WL 5792361, at *9 (C.D. Cal. Jul. 26, 2005); HVAC Sales, Inc., v. Zurich American Ins. Group, No. 04-03615, 2005 WL 2216950, at *20 (N.D.

Cal. Jul. 25, 2005). I note that the analysis contained in Osborn, which I also find particularly persuasive, serves as the foundation for many of the subsequent cases declining to follow Tapscott. See, e.g., HVAC Sales, Inc., 2005 WL 2216950, at *16-17. While these California decisions are not binding on this Court, they are nonetheless helpful because the instant member cases are transferred from California.

In my view, these are considerable reasons against adopting fraudulent misjoinder. Conducting fraudulent misjoinder analysis in this case necessarily requires the Court to wade into a thorny thicket of unsettled law; indeed, disagreements exist as to numerous questions about the doctrine, and "the last thing the federal courts need is more procedural complexity." Osborn, 341 F. Supp. 2d at 1127. In fact, these unresolved issues have raised significant doubt in the context of remand. Absent Third Circuit directives, this Court declines to adopt fraudulent misjoinder. As a matter of policy, this approach is especially prudent in light of the Third Circuit's well-settled principle that the removal statutes should be strictly construed, and all doubts regarding the propriety of removal are to be resolved in favor of remand. See Abels v. State Farm Fire & Cas. Co., 770 F.2d 26, 29 (3d. Cir. 1985). Moreover, "creating a new doctrine having the effect of expanding the removability of state court cases that, on their face, do not fall within the limited jurisdiction of the federal courts is neither wise nor warranted." Bird, 2007 WL 43551, at *12. Indeed, doing so would contravene the circuit court's instruction to narrowly construe the removal statutes. Accordingly, by rejecting the fraudulent misjoinder doctrine, there is a lack of complete diversity here, which constrains this Court to remand these member cases to state court.[8]

---

[8] The Moving Defendants also argue that defendant McKesson was fraudulently joined. However, this issue is moot because even disregarding those plaintiffs who reside in California, each of these cases also includes at least one plaintiff residing in one of the states in which Defendants BMS and Sanofi are citizens -- New York, New Jersey, or Delaware. In other words, even if McKesson were fraudulently joined, complete diversity would still be lacking in all of

As a final note, my decision against adopting the fraudulent misjoinder doctrine is based on a careful consideration of the removal statutes and the accompanying case law on this issue. Such a result, in my view, comports with the traditional notion of the limited nature of federal jurisdiction. In that regard, the arguments pertaining to misjoinder of claims should be presented to the state court for its adjudication. With that said, however, the Moving Defendants' position as to the manner in which Plaintiffs here have pled their Complaints, including the joining of numerous potentially non-related claims, raises substantial concerns. Indeed, the instant Complaints join various claims of Plaintiffs from different states who likely have no connection to each other but for their ingestion of Plavix. In fact, the Complaints are unclear as to facts surrounding Plaintiffs' injuries: whether these Plaintiffs received Plavix from the same prescribing physician, suffered the same type of injuries, ingested Plavix for the same reasons, used Plavix for similar lengths of time, or took similar dosages of Plavix. While I am aware that California's joinder rules are particularly liberal, these factual matters will nevertheless necessarily have an impact on the outcome of the dispute over joinder of claims by Plaintiffs. In my view, in pharmaceutical cases like the ones here, courts should be steadfast in guarding against plaintiffs' attempts at forum shopping by employing questionable procedural mechanisms, including misjoinder of claims. The question of misjoinder remains in these cases, but will be left to the sound judgment of the state court.

---

these cases. Accordingly, the Court need not address the arguments pertaining to fraudulent joinder of McKesson.

## CONCLUSION

For the foregoing reasons, the Court lacks subject matter jurisdiction over these actions because there is no complete diversity and thus, they will be transferred to the Northern District of California for the purposes of remand to the California Superior Court located in San Francisco, California.  An order will be entered consistent with this Opinion.


Dated: September 12, 2014                                                      /s/    Freda L. Wolfson
                                                                                                                Freda L. Wolfson, U.S.D.J.